*1150TEXTO COMPLETO DE LA SENTENCIA
La Corporación del Fondo del Seguro del Estado (“FSE”) presentó un recurso de revisión el 21 de marzo de 2001 en el cual solicitó la revocación de la resolución emitida por la Comisión Industrial de Puerto Rico (“la Comisión”) el 16 de junio de 2000, notificada el 2 de noviembre de 2000 en el caso #95-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-1. Mediante dicha resolución, la Comisión resolvió que el obrero lesionado, Carmelo Meléndez Rodríguez (“Meléndez”), fuese revisado por el FSE para evaluación del Cirujano Dental Maxilofacial y según recomendación de éste, determinara si el obrero necesita una prótesis para el área superior de la boca.
Por los fundamentos que expresaremos a continuación, se confirma la resolución recurrida.
I
El 17 de marzo de 1993, Meléndez acudió al FSE porque sufrió un accidente en el trabajo. Según Meléndez, para el 1983 ó 1984, mientras se encontraba trabajando en la constmcción y mientras sacaba unas cuñas de acero, una de éstas salió disparada y le dio en la boca. Como consecuencia comenzó a perder los dientes del frente poco a poco.
Meléndez tardó 10 años en reportar el accidente al FSE; sin embargo, recibió tratamiento por parte de éste. Meléndez señaló que no reportó el accidente al FSE en aquel momento porque el patrono le prometió pagar por el tratamiento.
El 19 de marzo de 1993, el FSE decidió brindarle tratamiento médico a Meléndez mientras trabajaba, por lo que fue referido para evaluación. Posteriormente, el FSE le dio tratamiento dental y autorizó a que le pusieran una prótesis dental en el maxilar inferior.
El 13 de diciembre de 1993, Meléndez acudió nuevamente al FSE debido a una recaída en su condición dental que consistió en que se le partió la prótesis. Desde esa fecha hasta el 1 de febrero de 1995, Meléndez fue tratado por un dentista y un médico generalista autorizado por el FSE. Como parte del tratamiento, le realizaron varias extracciones dentales y se le proveyó una prótesis para el área superior e inferior de la boca.
El 22 de septiembre de 1995, el FSE decidió cerrar y archivar el caso bajo el fundamento de que la tardanza en reportar el accidente era injustificada. El FSE alegó que no pudo llevar a cabo las investigaciones de rigor coetánea a la ocurrencia de los hechos de manera tal que pudiera relacionar los mismos.
Meléndez apeló la determinación del FSE ante la Comisión. El 2 de junio de 2000, se celebró la correspondiente vista pública. Luego del desfile de pmeba, el Comisionado determinó que:

“...En término de la caducidad del caso, no hay dudas que la acción por el accidente del lesionado estaba prescrita.. La decisión del Patrono Asegurado no fue apelada, y al día de hoy se determina que la misma es nula, por lo cual no va a tener efectos legales el patrono. La acción de tratamiento ofrecido a Don Carmelo no procedía por ser una acción de accidente prescrito, pero el Fondo va a tener que evaluar al lesionado y responsabilizarse por la intervención que hizo, por la doctrina de Erazo que establece que una vez se intervino con él, le hizo extracciones, tiene una responsabilidad sobre las mismas, aunque el accidente no fuese aceptado, así como cualquier doctor que interviene con cualquier persona y tiene algún tipo de eventualidad o 
*1151
responsabilidad sobre la misma; en ese sentido, la reevaluación sobre eso y si necesita una prótesis para la parte superior, tiene que evaluarlo, proceder si corresponde a subsanar eso y no pueden cobrárselo al patrono; obviamente, el Fondo tenía conocimiento de que no tenían fecha del accidente y que esta condición no estaba aceptada.” 

El 22 de noviembre de 2000, el FSE presentó una moción de reconsideración en la que solicitó el cierre y archivo del caso.
El 5 de diciembre de 2000, la Comisión emitió una resolución acogiendo la moción para reconsiderar, pero no se expresó sobre ella dentro del término dispuesto en ley, por lo que el FSE, oportunamente, acudió ante nos a través de un recurso de revisión judicial mediante el cual le imputa a la Comisión cuatro errores que, en síntesis, consisten en lo siguiente:

“1. Si erró la Comisión al no formular determinaciones de hechos y conclusiones de derecho conforme lo dispone el Artículo 6 de la Ley de Compensaciones por Accidentes del Trabajo y la jurisprudencia.

2. Si erró la Comisión al devolver el caso al FSE para tratamiento sin resolver la controversia legal esencial de cierre y archivo del caso por una tardanza injustificada de 10 años en reportar un accidente del trabajo al FSE.

3. Si erró la Comisión al devolver el caso al FSE para tratamiento, sin existir recomendación médica de peritos debido a que el Comisionado no permitió prueba pericial a los fines de determinar si la tardanza de 10 años se justificaba. Si constituye una violación al debido proceso de ley ordenar al FSE proveer un tratamiento que no fue objeto de discusión ni de recomendación en vista pública.

4. Si erró el Comisionado al expresar que “la decisión de patrono no asegurado notificada el 28 de junio de 1994, no fue apelada y al día de hoy se determina que la misma es nula, por lo cual no va a tener efectos legales el patrono y que ese tratamiento no procede cobrárselo al patrono. ” Si lo correcto es que al no apelar la decisión de patrono no asegurado, ésta advino final y firme y la Comisión Industrial no tenía jurisdicción para declararla nula ni para liberar al patrono de los gastos incurridos por el FSE en el accidente del obrero sin determinar si ocurrió o no tal accidente de trabajo. ”

II
De entrada, debemos señalar que el alcance de la revisión judicial comprende tres áreas. Ellos son: (1) concesión del remedio apropiado; (2) revisión de las determinaciones de hechos conforme al criterio de la evidencia sustancial, y (3) revisión completa y absoluta de las conclusiones de derecho” Fernández Quiñones, Demetrio, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da. Ed, Bogotá, Forum, 2001, pág. 534. Expresamente, el Artículo 6 de la Ley de Compensaciones, 11 L.P.R.A. § 8 dispone:

“Será deber de los Comisionados, una vez las partes sometan un caso para su consideración, emitir la resolución correspondiente bajo su firma. Esta contendrá de sus conclusiones de derecho a tenor con la evidencia, determinaciones de hechos y la ley aplicable. Cuando la solicitud de reconsideración fuera hecha por parte interesada, la misma deberá presentarse ante el mismo Comisionado que la emitió conforme a lo que dispuesto en las secciones 2101 et seq., del Título 3, según enmendadas, conocidas como Ley de Procedimiento Administrativo Uniforme. ”

Así, pues, surge con claridad de las disposiciones de la Ley de Compensaciones que el informe del oficial examinador deberá contener un resumen de evidencia, conclusiones de hechos y conclusiones de derecho. Por su parte, el Artículo 10 de la referida Ley dispone en lo pertinente:

*1152
“El informe que radique el oficial examinador deberá contener un resumen de la evidencia recibida, una exposición de sus conclusiones de hecho y conclusiones de derecho a tenor con la evidencia recibida, los hechos y la ley aplicable. ”

El Tribunal Supremo, en la interpretación del referido artículo, ha sostenido que “la ausencia de conclusiones de hechos en la resolución de la Comisión Industrial y en el informe del oficial examinador es contraria a las disposiciones expresas del Artículo 10 de la Ley de Compensaciones por Accidentes del Trabajo. ” Vega Cruz v. Comisión Industrial, 109 D.P.R. 290, 292 (1970). “El informe del examinador, además de hacer un resumen de la prueba, lo cual es de gran valor tanto para la Comisión como para este Tribunal, debe exponer al final sus conclusiones sobre los hechos, que la Comisión podrá adoptar como sus determinaciones. Debe tenerse presente que una cosa es el resumen de la prueba , y otra cosa es las determinaciones sobre los hechos que se concluyen probados. Estamos obligados por ley a respetar las determinaciones de hechos probados que haga la Comisión Industrial, si están sostenidas por la prueba. Para ello, es esencial que se formulen tales determinaciones. ” Vega Cruz v. Comisión Industrial, 110 D.P.R. 349, 352-353 (1980).
A su vez, la Ley Núm. 70 de 12 de agosto de 1998, 3 L.P.R.A. § 2101, et seq., conocida como la Ley de Procedimiento Administrativo Uniforme (“LPAU”), fue creada con el propósito de fijar un cuerpo de reglas mínimas que provea uniformidad al proceso decisorio de la administración pública. La misma aplica a todas las agencias administrativas que no estén expresamente excluidas. La Comisión no está exenta de la aplicación de LPAU. Dicha ley específicamente dispone en su sec. 3.14 que las órdenes y resoluciones finales de las agencias deberán incluir y exponer separadamente determinaciones de hechos si éstas no se han renunciado y las conclusiones de derecho que fundamentan su adjudicación. 3 L.P.R.A. § 2164. Este requisito tiene varios propósitos, entre otros: (1) proporciona a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilita esa tarea; (2) fomenta que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción; (3) ayuda a la parte afectada a entender porqué el organismo administrativo decidió como lo hizo, para así poder decidir si acude al foro judicial o acata la determinación, y (5) evita que los tribunales se apropien de funciones que bajo el concepto de especialización corresponden, propiamente, a las agencias administrativas. Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 276-278 (1987).
En síntesis, corresponde a las agencias emitir dictámenes que le permitan a los tribunales ejercer su función revisora. El derecho a revisión judicial carecería de contenido de otra forma.
III
Resolvemos que una lectura integral de la Resolución recurrida permite a este Tribunal, a base de lo en ella expresado, ejercer su función revisora. En dicha Resolución existe un resumen narrativo de la prueba y de los distintos testimonios y posiciones vertidas en la vista. A pesar que las declaraciones de testigos no constituyen hechos probados, es menester señalar que en este caso no hay controversia sobre dichos testimonios y los hechos simples que dan margen al presente recurso.
Indudablemente, del expediente ante nos y según el resumen de la prueba de la Resolución recurrida, no hay duda sobre los siguientes hechos: (1) Meléndez sufrió un accidente; (2) el patrono era uno no asegurado (Véase Decisión del Administrador de 17 de junio de 1994, notificada 28 junio de 1994, Ap., pág. 13); (3) transcurrió el término de casi diez años sin que Meléndez acudiera al FSE, y (4) cuando finalmente Meléndez se reportó al FSE fue evaluado y tratado por éste (Véase Decisión del Administrador emitida y ¿lotificada el 22 de septiembre de 1995, Ap., pág. 12).
Todos estos hechos encuentran apoyo en determinaciones previas emitidas por el propio FSE que forman parte del expediente ante nos. En el presente caso, los hechos están probados y no merecen adjudicación de credibilidad alguna por parte de la Comisión para disponer del mismo. La cuestión a determinar a base de los *1153hechos probados se limita a resolver qué derecho posee Meléndez una vez el FSE le dio tratamiento médico.
Este Tribunal concluye que bajo las circunstancias antes esbozadas, requerir a la Comisión que exponga en su Resolución hechos ya probados y que constan en Resoluciones que son finales y firmes, es un requisito de mera formalidad que, aunque sumamente deseable y es la mejor práctica, en el caso ante nos, no limita la función revisora de la determinación de derecho emitida por la Comisión. El alegado error no se cometió.
IV
Con relación a los otros errores señalados, debemos apuntar a que la Ley de Compensaciones, 11 L.P.R.A. § 1, et seq., es un estatuto de naturaleza remedial que pretende brindar al obrero ciertas protecciones y beneficios en el contexto de accidentes ocurridos en el escenario de trabajo. Con este fin, dicha ley establece un esquema de seguro compulsorio cuya finalidad es proveerle a los obreros que sufren alguna lesión o enfermedad que ocurra en el trabajo un remedio rápido y eficiente libre de las complejidades de una reclamación ordinaria en daños. López v. F.S.E., 146 D.P.R. 778, 785 (1998); Pacheco Pietri y Otros v. E.L.A. y Otros, 133 D.P.R. 907, 914 (1993). De conformidad con el Artículo 2 de Ley de Compensaciones, 11 L.P.R.A. § 2, para que un obrero o empleado [o sus dependientes en el caso de muerte], pueda reclamar con éxito los beneficios que en la misma se conceden, es preciso que el accidente que origina la solicitud de los beneficios satisfaga los siguientes tres (3) requisitos: (1) provenga de cualquier acto o función del obrero; (2) que sea inherente al trabajo o empleo del obrero, y (3) que ocurra en el curso de éste. El accidente será compensable si le produce al trabajador una lesión que le incapacita para trabajar. Id. Ahora bien, el FSE no es un asegurador absoluto de todo accidente sufrido por un obrero. Rivera v. Comisión Industrial, 101 D.P.R. 56, 58 (1943).
Por otra parte, el Artículo 5 de la Ley de Compensaciones, supra, dispone en lo pertinente:
“La negativa u oposición sin justa causa, del obrero o empleado a someterse al examen médico o tratamiento facultativo provisto por el Administrador, surtirá el efecto de privarlo de su derecho a recibir compensación; disponiéndose, que si el obrero o empleado no se presentare al médico dentro de los próximos cinco (5) días laborables; después de la ocurrencia del accidente para tratamiento facultativo, ni explicare satisfactoriamente su demora al Administrador, éste podrá privarlo de su derecho a recibir compensación alguna, pero no podrá negarse al obrero o empleado bajo ninguna circunstancia, la asistencia médica que a juicio del Administrador se considere necesaria hasta lograr su total restablecimiento; disponiéndose, sin embargo, que cuando el obrero hubiere probado a satisfacción su demora, el Administrador vendrá obligado a pagarle la compensación total o la incapacidad incluyendo las dietas por el tiempo que hubiere estado bajo tratamiento médico; y disponiéndose, además, que para apreciar y comprobar la incapacidad con que queda afecto el obrero o empleado, el Administrador podrá compeler la comparecencia personal del lesionado por cuenta del Fondo del Seguro del Estado.” (Enfasis suplido.) 11 L.P.R.A. § 6.
Nuestro Tribunal Supremo ha especificado los propósitos que animan el requisito de que el obrero comparezca a examen médico dentro del término de cinco (5) días laborables, después de la ocurrencia de un accidente laboral, éstos son: (1) informar al Administrador la ocurrencia del accidente ofreciéndoles así la oportunidad de investigar el mismo y determinar si efectivamente se trata de uno compensable, y (2) asegurarse de que el obrero reciba tratamiento adecuado para la lesión o daño recibido. Guzmán Muñoz v. Comisión Industrial, 85 D.P.R. 700, 703 (1962). En fin, el Artículo 5, supra, de la Ley de Compensación consigna una penalidad en aquellos casos de accidentes laborales, cuando el obrero lesionado o su patrono no reportan el accidente en determinado tiempo.
La penalidad por no cumplir con los términos establecidos le da el poder discrecional al FSE de privar al lesionado de su derecho a recibir compensación, pero nunca se le podrá negar la prestación del tratamiento médico que su condición requiera. No obstante, si el obrero explicare satisfactoriamente su demora en radicar la reclamación, esto es, que mediare justa causa, entonces tendrá derecho a recibir protección de la ley, que incluye *1154tratamiento médico y el pago de compensaciones. Es decir, si luego del obrero ser evaluado, el médico del FSE entiende que la condición se agravó por falta de tratamiento médico, o porque éste no fue el adecuado, se emitirá decisión reconociendo el derecho a tratamiento, pero privando al obrero del derecho a recibir pagos por concepto de incapacidad transitoria y/o permanente. Véase Ledo. Alberto Acevedo Colom, Leda. María Cristina Ramos Ruiz, Legislación de Seguridad Social del Trabajo Comentada, 2000, Primera Edición, a las págs. 144-145. Las razones para esta norma no es otra cosa que un reconocimiento de que existen circunstancias en las cuales la inhabilidad resultante de un suceso en el trabajo se manifiesta de forma paulatina o gradual. Igualmente ocurre con muchas enfermedades ocupacionales cuya inhabilidad resultante tienen un desarrollo gradual e imperceptible durante un largo período. Véase Arthur Larson & Lex. K. Larson, Larson's Wokers' Compensation Law, Ed. Matthew Bender, Vol 3, Chapter 7. En el caso ante nos, Meléndez señaló que la demora en reportar el accidente se debió al incumplimiento de promesa por parte del patrono no asegurado. Además, el problema médico-dental del obrero se vino a detectar pasado largo tiempo de la fecha del accidente. Ciertamente, una vez el FSE le brinda al obrero tratamiento médico que luego provoca otros problemas o resulta el tratamiento inadecuado o deficiente, entonces el FSE tiene la responsabilidad legal de proveerle lo que correctamente en la práctica médica corresponda. Hacer lo contrario, muy bien podría ser un acto de impericia médica.
V
No debemos olvidar que en cuanto a las determinaciones de hechos, los tribunales apelativos deben ser cautelosos al intervenir con las determinaciones administrativas de los foros especializados porque éstas merecen gran consideración y respeto por los tribunales en la etapa de revisión judicial, Rivera Concepción v. Administración de Reglamentos y Permisos, _ D.P.R. _ (2000), 2000 J.T.S. 155, a la pág. 160; Assoc. Ins. Agencies, Inc. v. Com. de Seguros, 144 D.P.R. 425, 436 (1997); Misión Ind. v. J.P. y A.A.A., 142 D.P.R. 656, 672-673 (1997); Metropolitana, S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995); Viajes Gallardo v. Clavell, 131 D.P.R. 275, 289-290 (1992); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
La revisión judicial es limitada. Sólo determina si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que abusó de su discreción, Municipio de San Juan v. Junta de Calidad Ambiental, _D.P.R._ (1999), 99 J.T.S. 152, a la pág. 125; T-JAC, Inc. v. Caguas Centrum Limited Partnerhip, S.E., _D.P.R._ (1999), 99 J.T.S. 60, a la pág. 884; Com. Vec. Pro-Mej., Inc. v. J.P., 147 D.P.R. 750, 761 (1999); Fuertes y Otros v. A.R.P.E., 134 D.P.R. 947, 953 (1993). A tenor con esta norma de deferencia, los tribunales no alteran las determinaciones de hechos de los organismos administrativos si del expediente administrativo surge evidencia sustancial que las sostenga, Municipio de San Juan v. Junta de Calidad Ambiental, _D.P.R._ (2000), 2000 J.T.S. 193, a la pág. 474; Asociación de Vecinos del Hospital San Jorge v. United Medical Corporation y Gerónimo Partnership, Etc., _D.P.R._ (2000), 2000 J.T.S. 21, a las págs. 560-561; Domínguez Talavera v. Caguas Expressway Motors, Inc., _D.P.R._(1999), 99 J.T.S. 85, a las págs. 1067-1068; T-JAC, Inc. v. Caguas Centrum Limited Partnership, S.E., supra, a la pág. 884; García Oyola v. J.C.A., 142 D.P.R. 532, 540 (1997); Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521, 532-533 (1993). La evidencia sustancial “es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión,” Asociación de Vecinos del Hospital San Jorge v. United Medical Corporation y Gerónimo Partnership, Etc., supra, a la pág. 561; Ramírez Rivera v. Departamento de Salud, 147 D.P.R. 901, 906 (1999); Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953).
Así es que para convencer al tribunal de que la evidencia utilizada por la agencia para formular una determinación de hecho no es sustancial, la parte afectada debe demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada hasta el punto de que no pueda ser concluido que la determinación de la agencia fue razonable de acuerdo a la totalidad de la prueba que tuvo ante su consideración, Municipio de San Juan v. Junta de Calidad Ambiental, supra, a la pág. 473; Ramírez Rivera v. Departamento de Salud, supra, a la pág. 906; Metropolitana, S.E. v. A.R.P.E., supra, a la pág. 213; Hilton Hotels v. Junta de Salario Mínimo, supra, a la pág. 686. No obstante, el tribunal debe sostener la resolución de un conflicto probatorio por parte de la agencia, siempre que ésta haya sido apoyada en una base racional, *1155J.R.T. v. Línea Suprema, Inc., 89 D.P.R. 840, 849 (1964).
Las determinaciones de derecho de las agencias administrativas, contrario a las determinaciones de hechos, pueden ser revisadas en todos sus aspectos por el tribunal “sin sujeción a norma o criterio alguno”, PRTC v. Junta, _D.P.R._ (2000), 2000 J.T.S. 98, a la pág. 1266; 3 L.P.R.A. § 2175. Se le debe dar deferencia a las conclusiones de derecho emitida por las agencias, siempre y cuando las mismas estén sujetas al mandato de la ley. De Jesús v. Departamento de Servicios Sociales, 123 D.P.R. 407, 417-418 (1989).
VI
En el caso de autos estamos totalmente de acuerdo con la posición del FSE en cuanto a que una tardanza de casi diez años en informar un accidente de trabajo, como en el presente, es una que puede constituir la privación al obrero de percibir compensación bajo la Ley de Compensaciones. Sin embargo, esto no significa ni puede entenderse como que al obrero, en este caso Meléndez, se le pueda privar de aquella asistencia médica que el Administrador considere necesaria hasta lograr un total restablecimiento. 11 L.P.R.A. § 6.
De una lectura de la Resolución recurrida, ciertamente se desprende, a pesar del lenguaje empleado por la Comisión, que ésta concluyó en el caso de autos que la tardanza de Meléndez al acudir al FSE fue una injustificada, por lo que éste ciertamente no tiene derecho a recibir la compensación cobijada por ley. A su vez, la Comisión resaltó que el patrono no es responsable. No obstante, la Comisión adjudicó responsabilidad al FSE por las intervenciones realizadas por éste en la persona de Meléndez. Sencillamente, la Comisión no hizo otra cosa que determinar que el FSE no está inmune de ser responsable de aquellas actuaciones que fueron realizadas al darle tratamiento médico-dental a Meléndez, independientemente de que éste estuviera cobijado por la Ley de Compensaciones. Es decir, la responsabilidad del FSE no surge en sí misma de la Ley de Compensaciones, sino de las actuaciones de ésta sobre Meléndez. Así remite a Meléndez para que el FSE evalúe sus actuaciones en su persona.
Este Tribunal concluye que la Resolución recurrida está apoyada en una base racional, no es arbitraria ni caprichosa, por lo que merece nuestra deferencia.
VII
Por los fundamentos antes mencionados, se confirma la determinación de la Comisión.
Lo acuerda y manda este Tribunal y lo certifica la Secretaria General.
Aida Heana Oquendo Graulau Secretaria General
ESCOLIO 2003 DTA 67
1. La doctrina de “Erazo” se refiere a Larson.